(51 South. 675.)

No. 17,605.

KERN v. NEW ORLEANS RY. & LIGHT CO.

(Feb. 28, 1910.)

*(Syllabus by the Court.)*

STREET RAILROADS (§ 114*)—INJURIES TO PEDESTRIAN—EVIDENCE.

An electric car of the defendant company, going from the front of the city to the rear, came to a stop at the corner of Dumaine and Royal streets. While so stopped, a little girl and a servant in charge of her, walking up Royal street on the wood side, reached the corner of Dumaine street, and stopped to let the car pass by. The motorman signaled them to go across the street, and simultaneously, without warning, started his car, which, though moving slowly, struck the child and injured it. *Held*, the motorman was at fault.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 114.*]

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Alcide A. Kern against the New Orleans Railway & Light Company. Judgment for defendant, and plaintiff appeals. Reversed, and judgment rendered.

James Wilkinson and A. J. Peters, for appellant. Dart, Kernan & Dart, for appellee.

NICHOLLS, J. Plaintiff (for the use and benefit of his adopted child, Elsie Lee Kern) sues the defendant company for damages to her by having been injured by one of defendant's cars through the fault and negligence of the motorman operating the car. He alleges: That on December 31, 1905, petitioner was residing with his family at No. 1211 Royal street, near Hospital, in this city, and at about half past 4 in the afternoon of said day, his said child, who was then about seven years old, left petitioner's home in company with a servant, with the intention of walking up Royal street to Canal street. That they proceeded along the wood side of Royal street, and when near the corner of Dumaine and Royal streets they noticed car No. 2 of the French Market line (which line is owned and operated by the defendant company) coming out Dumaine street from the direction of the river on its way to the rear of the city. That the neutral ground at the corner of Royal and Dumaine streets is intersected by two tracks; one of the St. Charles Street Railroad for its cars going up Royal street and crossing Dumaine street, and the other of the French Market line of cars going out Dumaine street and crossing

Royal street, said tracks crossing each other at right angles.

That when petitioner's said child and servant reached the downtown wood side corner of Royal and Dumaine streets, the said car No. 2 of the French Market line slacked up and came to a stop in the middle of the neutral ground on said streets. That said child and servant were then on the crossing over the gutter, where they stood, and where they had intended to stand until said car had gone by. That the motorneer who was in charge of said car, and whose name is unknown to petitioner, called to them to cross over, which they would not do. That he again called to them to cross over, and, believing that they could safely do so, they left the place where they were standing and started to cross the track and street. That after they had started to cross the track and street the motorneer, notwithstanding the fact that he had told them to cross over, deliberately put his car in motion, and when the said child was about in the middle of the track, and before she could get out of the way, the car struck her and knocked her down, the front part of said car passing over her. That her death was averted only because of the fact that the car was stopped before the front wheel reached her prostrate body.

That after the child was struck as aforesaid she was bleeding profusely from wounds and bruises about the left temple and on the scalp, and she was bruised on her body where she had been struck, and where she had fallen. That she was taken to the Hospital, where her wounds were dressed and her hair cut off. That for several days after the accident she had severe headaches, and it then developed that because of the shock which she had undergone the muscles of her eyes were paralyzed, causing her to be cross-eyed. That petitioner was compelled to send her to the Eye, Ear, Nose & Throat Hospital for examination, and that she had been under treatment there ever since. That she is subject to severe headaches, has been unable to attend school regularly, and has been compelled to use glasses constantly; the injury to her eyes and eyesight being permanent.

That said accident and resulting injury was in no way the result of any fault or negligence on the part of petitioner, or of petitioner's said child or servant, but was solely owing to the gross fault and negligence of the motorneer on the car by which she was struck as hereinabove recited. That aforesaid wrongful acts and negligent conduct of the officers and agents of aforesaid company has caused petitioner's said child damages as follows, and for which damages defendant company is liable to petitioner, as the adopted father of said child, and for her use and benefit.

First. Five thousand dollars ($5,000) for shock, physical pain and suffering, and mental distress and agony suffered by her at the time of and succeeding said accident.

Second. Five thousand dollars ($5,000) for injury to her eyes, resulting in cross eyes, permanent impairment of eyesight, and disfigurement, necessitating constant attendance at Hospital, subjecting said child to severe headaches, and preventing her from attending school.

Third. Five thousand dollars ($5,000) exemplary damages, which should be awarded because of the gross fault and reckless acts of defendant company's agents and employés, and through which petitioner's child, without fault on her part, was injured as above set forth. That he is the adopted father of said child; he, together with his wife, having legally adopted her, with the consent of her widowed mother, by act before George W. Dearing, Jr., notary public, on August 8, 1902.

Defendant, after pleading a general denial in its answer, alleged: That, if plaintiff's adopted child was injured as alleged, she received said injuries through no fault or neg-

ligence of respondent, its servants, agents, or employés; but the said injuries were due to the carelessness and negligence of the child, Elsie Lee Kern, and of the servant in whose charge she was, in attempting to cross the track in front of an approaching car, which was in full view, and was then too close to the crossing upon which said child and the servant in whose charge she was were passing for them to have made an attempt to cross in safety. That the actions of the said child and of the servant having charge of her, in attempting to cross the track, under the circumstances, contributed to, if they were not the sole cause of, the injuries.

In view of the premises, respondent prays that plaintiff's demand be denied and rejected, at his costs, and that there be judgment in respondent's favor and for all general and equitable relief.

The case was tried before the district judge without a jury, who rendered a judgment in favor of the defendant, rejecting plaintiff's demand and dismissing his suit.

Plaintiff has appealed.

The witnesses as to the occurrences which happened at the time of the injury to the little girl were, on behalf of the plaintiff, the child herself (Elsie Kern) and Mrs. Ida Kaskinen (the person who in the petition is spoken of as a servant); and on behalf of the defendant, Pertuit, the motorman of the car which struck the child, Poss, the conductor of the car, and a man by the name of Hanneman, who was in the employ of the defendant as conductor, but on another line.

The testimony of Mrs. Kaskinen was taken by consent out of court; she having since the date of the accident married and left the state. She is a foreigner, and her testimony had to be taken through an interpreter. The child (as shown by the testimony) is exceedingly bright and intelligent, and her memory of the circumstances connected with her injury so distinct, as to call for criticism from defendant's counsel; he saying that it must have been quickened by repeated conversation with her adopted parents. Her answers under cross-examination go far to negative such a suggestion. Her version of the occurrences corresponds with those of the servant, with differences as to particulars which might very well have been expected.

We are of the opinion that the judgment of the district court, rejecting plaintiff's demand, is erroneous, and that the child was injured through the fault of the motorman, but that the injuries received by her were shown by the testimony to be greatly exaggerated. She undoubtedly suffered pain from the blows inflicted upon her; but the consequential injuries from them were not established to have been such as were pleaded. The physician placed by plaintiff on the stand attended her for a long time. He is an expert oculist, and testified that the trouble to her eyes is attributable to the peculiar form of one of the eyes itself, and that it can be, and has in fact been, relieved by the use of particular kinds of glasses; that the watering of the eyes, of which she greatly complains, is not referable to such blows. The conclusions which we have reached are different from what they would have been, had we been guided by that of the other witnesses.

We are satisfied that the motorman, having brought his car to a stand, when partly across the Royal street car tracks, motioned to the servant and the girl to cross the street in front of him, and simultaneously started his car forward, without warning, at a slow rate, thinking that, before the car would reach them, they would have cleared the tracks. He made a miscalculation, and the child was struck. He took the chances of their escaping injury and started his car with too much power, even as slowly as the car was moving. It was the motorman who took the risk of

the situation, and not the servant and child.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is, hereby annulled, avoided, and reversed; and it is now ordered, adjudged, and decreed that the plaintiff, for the use and benefit of his adopted child, Elsie Lee Kern, do have and recover from the defendant company the sum of $500, with legal interest from judicial demand until paid, with costs in both courts.